# IN THE COURT OF APPEALS OF IOWA

No. 19-0846
Filed September 11, 2019

**IN THE INTEREST OF A.S. and M.S.,**
**Minor Children,**

**A.B., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

    A mother appeals the termination of her parental rights to two of her minor children. **AFFIRMED.**

    James W. Thornton of Thornton & Coy, PLLC, Ankeny, for appellant mother.

    Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

    Shannon M. Leighty of Public Defender's Office, Nevada, guardian ad litem for minor children.

    Considered by Potterfield, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

A mother appeals the juvenile court's termination of her parental rights to two minor children.[1]  She argues the court should have granted her motion to continue the termination hearing, and she challenges the statutory grounds for termination.  On our review, we affirm.

## I.  Background Facts and Proceedings.

A.B. is the mother of A.S., born in 2016, and M.S., born in 2015.  The children's father, C.S., has not been involved in their lives.  Currently, A.B. is married to J.B. and they are the parents of Jo.B., born in 2017, who is the subject of a separate termination proceeding.  A.B. has had her parental rights terminated to four other children.

A.S. and M.S. were removed from their mother's care on November 9, 2017, because of concerns that Jo.B. was not being adequately fed and accusations that someone had physically abused M.S.  During an initial assessment, the Iowa Department of Human Services (DHS) noted additional concerns of unsanitary living conditions, mental-health issues, the children's medical issues, housing instability, income instability, and transportation issues.  Since that initial removal, the children have not returned to A.B.'s care.

On May 24, 2018, the juvenile court adjudicated A.S. and M.S. children in need of assistance (CINA).  Disposition followed almost one month later, and the court adopted the recommendations in a June 2018 case plan.  After the

---

[1] The children's father, C.S., did not participate in the termination proceedings. The district court terminated his parental rights under Iowa Code section 232.116(1)(b), (e), and (h) (2018).  He does not appeal.

November 8 permanency hearing, the district court noted that A.B. was not participating in services or addressing the issues the DHS had identified, and it concluded that the State should proceed with termination.

Ultimately, the State petitioned to terminate A.B.'s parental rights on December 21. The court scheduled a single termination hearing for May 2, 2019, to address parental rights as to M.S., A.S., and Jo.B. together. However, the court later scheduled another hearing as to Jo.B. when J.B.'s attorney became unavailable because of a scheduling conflict. The State also notified A.B. that the family's original DHS caseworker would not be available to testify at the May 2 hearing. On April 30, A.B. filed a motion to continue the hearing as to M.S. and A.S. to prevent duplicative testimony, to allow J.B. to have his attorney present, and to allow the original caseworker to testify. The juvenile court denied the motion after receiving oral arguments, and the case proceeded to the termination hearing.

During the hearing, the court took judicial notice of the exhibits in the CINA case; received exhibits from the State and A.B.; and heard testimony from the current DHS caseworker, A.B., and J.B. After the close of evidence, A.B. requested an additional six months to attempt to regain custody of her children. The State, the DHS caseworker, and the guardian ad litem recommended termination.

Following the termination hearing, the juvenile court terminated A.B.'s parental rights to A.S and M.S. under Iowa Code section 232.116(1)(e), (g), and (h) (2018). A.B. appeals.

## II. Standard of Review.

"[O]ur review of a district court's denial of a motion for continuance is for an abuse of discretion." *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "A court abuses its discretion when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *Id.* (quoting *In re A.M.*, 856 N.W.2d 365, 370 (Iowa 2014)). However, we review constitutional claims de novo. *Id.*

We review termination of parental rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings, but they are not binding on us. *M.D.*, 921 N.W.2d at 232. Our paramount concern is the children's best interests. *Id.*

## III. Analysis.

A.B. challenges the district court's denial of her motion to continue and the grounds for termination under Iowa Code section 232.116(1)(e), (g), and (h).

**A. Motion to Continue.** Before the termination hearing, A.B. argued the juvenile court should continue the hearing (1) in the interests of judicial economy, (2) to allow J.B. to have his attorney present to advise him, and (3) to allow the original DHS caseworker to testify.[2]

At the time of the termination hearing, the case had been on file for over seventeen months. If granted, a continuance risked delay of the hearing for at

---

[2] A.B. also argues for the first time on appeal that due process required a continuance. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). A.B. did not raise a due-process argument in either her written or oral argument before the juvenile court. For that reason, A.B. has not preserved the due-process issue for our review.

least another two months, if not longer. Further, J.B. has never had parental rights to M.S. or A.S., he was not a party to the termination proceedings on review here, and the State did not intend to call him as a witness.[3] In addition, the original DHS caseworker was experiencing serious health issues making it unclear when, or whether, she would return to work. Consequently, another experienced caseworker permanently took over the case, was familiar with A.B. and J.B., and had ongoing contact with the original worker throughout the case. In any event, before the termination hearing, the two DHS professionals staffed the case and fully reviewed the case file and recommendations.

In the end, the juvenile court determined that, while it would be ideal to continue the hearing from a judicial economy standpoint and so that A.B. would not have to endure two termination hearings, continuing the hearing was not in the children's best interests. We find no abuse of discretion in the juvenile court's denial of the mother's motion to continue.

**B. Termination of Parental Rights.** We next address our three-step analysis used to review the termination of parental rights under Iowa Code chapter 232. *See In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010). First we must determine whether a ground for termination has been established under section 232.116(1). *Id.* at 40. If so, we will consider whether termination is in the children's best interests. *Id.* Third, if the best-interests framework supports termination, we must

---

[3] To the extent A.B. argues the court should have granted a continuance so J.B. could have counsel present to advise him, she has no standing to assert claims on his behalf. *See In re K.R.,* 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (noting that a father lacked standing to assert the mother's claim "on her behalf in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights").

consider whether any statutory exceptions exist to preclude termination of parental rights. *See* Iowa Code § 232.116(3); *P.L.*, 778 N.W.2d at 39–40.

Here, the juvenile court found termination was appropriate under Iowa Code section 232.116(1)(e), (g), and (h). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Iowa Code section 232.116(1)(h) authorizes termination of parental rights when:

> The court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

A.B. only contests the fourth element. A.B. notes that she has maintained employment with the same employer since May 2018, completed a mental-health evaluation, started individual and marriage counseling, completed a parenting class, submitted housing applications, and obtained reliable transportation. A.B. claims that she can presently resume custody of the children even though she is living with friends. Finally, A.B. asks for six more months to prove she is able to parent the children.

We conclude there is clear and convincing evidence that the children cannot be returned to A.B.'s custody. After removal in November 2017, DHS provided a case plan that outlined basic expectations for a successful reunification. Despite

clear direction, the mother exhibited minimal follow-through over the ensuing seventeen months leading up to termination. For example, A.B. has lacked stable housing since before removal, often staying with friends and acquaintances or at campgrounds and hotels. Even at the time of the termination hearing, she agreed her temporary arrangement was "staying with friends, again." In spite of holding a job since May 2018, her housing struggles continued and she failed to take advantage of housing assistance. When asked about her attempts to secure housing, A.B. noted that she had tried to submit an application to a rent-assistance organization but was denied for various reasons, including not submitting all of the necessary information. Moreover, she mentioned she was trying to pick up an application for long-term housing but had not yet done so. At the same time, she was considering applying to the apartment complex where her friends lived but was waiting until her husband found a job. Despite all of this history, A.B. testified that she believed she could find housing in the next six months.

Additionally, A.B. inconsistently exercised visitation with her children. She had opportunities to visit the children three times per week but missed about two-thirds of the offered visitation. Because of her underutilization of visitation, DHS reduced her visits to two per week. When she did attend visitation, the caseworker was concerned she was not adequately supervising the children. A.B. blamed the public setting and the independence of her children as causes. To explain the parenting deficiencies, A.B. testified that her children became frustrated with her at times and this affected her engagement with the children. At the time of the termination hearing, A.B. had not progressed beyond fully supervised visitation

and the caseworker believed "she was unable to parent all three children at once even with direction."

While A.B. made some progress during the case, most of the progress took place on the eve of the May 2, 2019 termination hearing. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). She only began consistently attending visitation in the month before the termination hearing. Additionally, the initial DHS plan directed A.B. to seek a mental-health evaluation and services, but she did not complete her mental-health evaluation until March 2019. While the evaluation recommended weekly sessions, she only attended four sessions, all of which were in the two months before the termination hearing. Moreover, A.B. did not complete the recommended parenting classes until April 24, and she did not obtain the certificate of completion of these classes until the day before the termination hearing. Reliable transportation was an issue throughout the case, but A.B. waited until the night before the hearing to buy a car.

Contrary to her assertions, the history provides no assurance that A.B. could parent the children if given an additional six months. Past performance is an indicator of ability to provide care. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). The current DHS caseworker saw "very little change" in A.B.'s parenting skills since removal, and the worker believes "[i]t is unlikely that would change in the future." Accordingly, the mother's history of sporadically engaging in services shows she struggles with the same issues that have been present since this case began. A.B. had over seventeen months to prove she was able to parent these

children but failed to make any notable changes until right before the termination hearing. *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[T]he statutory time must be followed and children should not be forced to wait for their parent to grow up."). The State has proved by clear and convincing evidence that termination is appropriate under Iowa Code section 232.116(1)(h). For that reason, we do not address the remaining two grounds justifying termination.

Simply put, we find clear and convincing evidence that termination is in the children's best interests because they have been out of the mother's care since they were one and two years old and have no real bond with her. In contrast, the children have flourished in their foster home and have bonded with their foster parents. Finally, no statutory exception to termination exists. *See* Iowa Code § 232.116(3) (establishing exceptions to termination). We conclude termination was appropriate.

**IV. Disposition.**

For all of the above stated reasons, we affirm the juvenile court order terminating A.B.'s parental rights to M.S. and A.S.

**AFFIRMED.**